# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Ovidio D.,

      Petitioner,

v.

Todd Blanche, *Attorney General*;
Markwayne Mullin, *Secretary, U.S.
Department of Homeland Security*; David
J. Venturella, *Acting Director of
Immigration and Customs Enforcement*;
David Easterwood, *Acting Director, St.
Paul Field Office Immigration and
Customs Enforcement*; and Ryan Shea,
*Sheriff of Freeborn County*;

      Respondents.

No. 26-cv-3374 (KMM/SGE)

**ORDER**

---

Federal immigration authorities have detained Ovidio D. (hereafter "Mr. D." or "Petitioner") since July 16, 2026. On July 22, 2026, Mr. D. filed a Petition seeking a Writ of Habeas Corpus, which is now before the Court. (Dkt. 1.) For the following reasons, the Petition is granted in part and denied in part, and Respondents are required to provide Mr. D. with an individualized bond hearing within fourteen days of this Order.

1

## BACKGROUND

Mr. D. is a citizen of Honduras and a resident of West St. Paul.[1] (Dkt. 1 ¶ 12.) He has lived in the United States since approximately 2016. (*Id.*) He does not have a final order of removal. (*Id.* ¶ 13.) Determining that he did not have authorization to be in the United States, Immigration and Customs Enforcement ("ICE") issued a Warrant for Arrest, form I-200 for Petitioner on July 14, 2026. (Dkt. 8 ¶ 5.) On July 16, ICE issued a Notice to Appear ("NTA") for Mr. D. (*Id.* ¶ 7.) Later that same day, ICE arrested Mr. D. following a scheduled court appearance for misdemeanor domestic violence and served him with the I-200. (*Id.* ¶ 8; *see* Dkt. 1 ¶ 18.[2]) Petitioner is currently detained at the Freeborn Adult Detention Center in Freeborn County, Minnesota. (Dkt. 1 ¶ 19; Dkt. 8 ¶ 10.)

Mr. D.'s Petition asserts four claims for relief. In Count One, Petitioner claims that Respondents have violated his constitutional right to due process of law under the Fifth Amendment. (Dkt. 1 ¶¶ 47–54.) In Counts Two, Three, and Four, Petitioner asserts variations of the same claim: his arrest violated his rights under the Constitution, the governing federal statutes, and applicable regulations. (*Id.* ¶¶ 55–68.) Respondents filed a

---

[1] This is the second time in recent months that Mr. D. has been detained by immigration enforcement authorities and a habeas petition of his has come before this Court. Back in March, the Court granted his previous petition and ordered his release from immigration detention. *Dubon v. Bondi*, No. 26-cv-01834 (KMM/SGE), Dkt. 7 (D. Minn. Mar. 7, 2026). However, the grounds on which that petition was granted have since been foreclosed by *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).

[2] While Mr. D. originally contended in his Petition that "Respondents did not have or produce a warrant justifying [his] arrest" on July 16, (Dkt. 1 ¶ 18), he appears to concede in his Reply that he was served a warrant, and is now only contesting the warrant's validity, (*see* Dkt. 9).

Response to the Petition and an accompanying Declaration on July 30, 2026 (Dkts. 7–8), to which Mr. D. replied on August 4, 2026 (Dkt. 9).

## DISCUSSION

A writ of habeas corpus may be granted to any person who shows that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). The right to challenge the legality of a person's confinement through a habeas petition "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020). The petitioner has the burden to prove that his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

## I.    Arrest

The Court starts with Petitioner's claims related to his arrest. Mr. D. argues that the I-200 warrant used to effectuate his arrest was invalid because it was issued prior to the NTA and, because Respondents failed to comply with the requirements of a warrantless arrest, he should be immediately released. (Dkt. 9 at 6–11.) Mr. D. does not directly dispute that both the I-200 (July 14) and NTA (July 16) were issued prior to his arrest and only challenges the validity of the I-200 on sequencing grounds.[3] Even assuming that such an error in ordering undermines the validity of the I-200, *see* 8 C.F.R. § 236.1(b), the Court disagrees that such an error here justifies the relief Petitioner seeks. Petitioner does not

---

[3] Respondents allege that the NTA was issued prior to Mr. D.'s arrest. (*E.g.*, Dkt. 7 at 3.) While Mr. D., in a footnote, appears skeptical of this sequence of events (Dkt. 9 at 3 n.2), he does not directly dispute Respondents' contentions.

dispute the soundness of the NTA, that he could be arrested subject to a valid I-200, or that both documents existed at the time of his arrest. He also cites no authority for the idea that such an error in timing requires release when both documents were issued prior to the arrest. The Court declines to order release on this basis.[4]

## II.    Due Process

Respondents invoke 8 U.S.C. § 1225(b)(2) to justify Mr. D.'s detention without a bond hearing, and the Eighth Circuit has recently approved application of that statutory provision to any alien who is present in the United States without having been admitted or paroled into the country. *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Subject to a provision that mandates detention, Mr. D. argues that he is deprived of due process of law because he does not receive an individualized assessment of whether such detention is necessary. The Court agrees.

### A. *Demore*, *Banyee*, and *Thuraissigiam*

The Court first considers whether Mr. D.'s due process claim is foreclosed by several decisions from the Supreme Court and the Eighth Circuit, as the Respondents allege: *Demore v. Kim*, 538 U.S. 510 (2003); *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020); and *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024). But the Court finds that these cases do not preclude a ruling in Petitioner's favor on his due process claim for largely the same reasons articulated by United States District Judges

---

[4] Mr. D. also raises an argument related to the effect the I-200 has on his statutory categorization and what process is accordingly owed to him. (Dkt. 9 at 3–6.) The Court does not reach this argument.

Laura M. Provinzino in *Anthony Javier R.M. v. Blanche*, No. 26-cv-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026), and Nancy E. Brasel in *Felipe S.P. v. Blanche*, No. 26-cv-2212 (NEB/DJF), 2026 WL 1911656 (D. Minn. July 2, 2026).

### *Demore* and *Banyee*

Turning first to *Demore* and *Banyee*, the Court concludes that neither decision forecloses Mr. D.'s due process claim for two reasons. First, those cases both considered a different provision of the INA, and that difference matters. Both *Demore* and *Banyee* addressed due process challenges to the mandatory detention scheme established by 8 U.S.C. § 1226(c). Unlike the detention authorized by § 1225(b), under section 1226(c), detention is required pending the completion of removal proceedings for certain "criminal aliens." *See Demore*, 538 U.S. at 513. In relevant part, § 1226(c) provides that the Secretary of Homeland Security "shall take into custody" noncitizens with specific criminal histories, including those who have "committed" crimes of moral turpitude or aggravated felonies. 8 U.S.C. § 1226(c)(1)(B)–(C) (cross-referencing, *inter alia*, 8 U.S.C. § 1227(a)(2)(A)(i)–(ii)).[5]

---

[5] Section 1226(c) now also requires DHS to detain noncitizens who have been charged with, arrested for, or convicted of "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer, or any crime that results in death or serious bodily injury to another person" 8 U.S.C. § 1226(c)(1)(E)(ii). These provisions were added to § 1226(c) in January 2025 as part of the Laken Riley Act, Pub. L. No. 119-1, 130 Stat. 3 (2025). Both *Banyee* and *Demore* addressed older versions of the statute. In any event, Mr. D.'s recent arrest does not render any portion of § 1226(c) applicable to him, and Respondents do not suggest otherwise.

Both of the petitioners in *Demore* and *Banyee* had been convicted of at least one aggravated felony. *Demore*, 538 U.S. at 513; *Banyee*, 115 F.4th at 930. The discussion in *Anthony Javier R.M.* aptly describes the context of *Demore* and *Banyee*:

In *Banyee*, the petitioner, a lawful permanent resident, was convicted of armed robbery. *See* 115 F.4th at 930. He was placed in removal proceedings and detained under Section 1226(c). *Id.* Although he was initially granted cancellation of removal by an immigration judge, the BIA reversed and remanded. *Id.* On remand, the petitioner was ordered removed by the immigration judge, and he appealed the order of removal to the BIA. *See id.* The petitioner, who by this point had been detained in a county jail for one year, sought habeas relief while that appeal was pending, challenging his "lengthy detention" during the removal proceedings on due process grounds but not "directly contesting the grounds for his mandatory detention." *Id.* at 930–31. The Eighth Circuit rejected the petitioner's argument, concluding that "the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 931 (alteration in original) (quoting *Demore*, 538 U.S. at 526).

Similarly, in *Demore*, the petitioner had been convicted of at least one aggravated felony offense. 538 U.S. at 513. He did not "dispute the validity of his prior convictions" or the government's "conclusion that he [was] subject to mandatory detention under § 1226(c)," and he "conced[ed] that he was deportable." *Id.* at 513–14. Instead, the petitioner argued that his detention under Section 1226(c) violated the Due Process Clause because the government "had made no determination that he posed either a danger to society or a flight risk." *Id.* at 514. The Supreme Court rejected the petitioner's argument and affirmed that his detention without a bond hearing was constitutionally permissible. *See id.* at 530. Critical to *Demore*'s holding—and *Banyee* to the extent it relies on *Demore*—was Congress's reliance, in enacting Section 1226(c), on findings supporting its "justifiabl[e] concern[ ] that deportable criminal aliens who are not detained [would] continue to engage in crime and fail to appear for their removal hearings." *Id.* at 513. The Supreme Court therefore reasoned

6

> that the "narrow detention policy reflected in 8 U.S.C.
> § 1226(c)," as applied to the class of criminal noncitizens in
> removal proceedings, was constitutionally permissible because
> "[s]uch detention necessarily serves the purpose of preventing
> deportable criminal aliens from fleeing prior to or during their
> removal proceedings, thus increasing the chance that, if
> ordered removed, the aliens will be successfully removed." *Id.*
> at 526, 528. In effect, the consideration of dangerousness and
> risk of nonappearance is already baked into Section 1226(c).

2026 WL 1506306, at *4.

From this background, Judge Provinzino observed that because the version of

§ 1226(c) in effect "when *Demore* and *Banyee* were decided" focused on the mandatory

detention of noncitizens "who had been convicted of criminal offenses," and had received

procedural protections from the criminal justice system, the due process concerns raised

by that subsection's mandatory detention scheme were lessened. *Id.* (quoting *Demore*, 538

U.S. at 513, and citing *Gomez v. Bondi*, No. SA-26-CA-00727-XR, 2026 WL 753307, at

*12 (W.D. Tex. Mar. 13, 2026) (noting that "the convictions themselves may stand in for

the individualized determination that might otherwise be taken up at a bond hearing, by

demonstrating either that the noncitizen is a danger to the community or a flight risk"));

*see Felipe S.P.*, 2026 WL 1911656, at *4 (stating that the criminal convictions identified

by Congress in § 1226(c) "were adjudicated with the full procedural protections of the

criminal justice system").

In contrast, under § 1225(b)(2), there are no baked-in procedural protections

attendant to an underlying criminal proceeding because that provision "requires only a

determination that a noncitizen is an 'applicant for admission' who is 'not clearly and

beyond a doubt entitled to be admitted.'" *Anthony Javier R.M.*, 2026 WL 1506306, at *5.

Moreover, there are no "congressional findings under Section 1225(b)(2) like those discussed in the context of Section 1226(c) suggesting that a noncitizen who . . . has not been convicted of any criminal offense, and who is detained under Section 1225(b)(2) based on his allegedly unlawful presence in the United States, is likely to be a flight risk or a danger to the community." *Id.* (citing *Demore*, 538 U.S. at 518–21; S. Rep. No. 104-48, at 32 (1995) ("Congress should consider requiring that aggravated felons be detained pending deportation. Such a step may be necessary because of the high rate of no-shows for those criminal aliens released on bond.")); *Felipe S.P.*, 2026 WL 1911656, at *5 ("[U]nlike Section 1226(c), Section 1225(b)(2) is not accompanied by evidence-based congressional determinations about the need to detain all noncitizens in deportation proceedings."); *see also Manuel G. v. Blanche*, No. 26-cv-2385 (SRN/ECW), 2026 WL 1256358, at *3–4 (D. Minn. May 7, 2026) (distinguishing *Banyee* and *Demore* and finding they do not foreclose a due process challenge to mandatory detention under § 1225(b)(2)).

Both *Demore* and *Banyee* addressed the due process concerns that are presented by mandatory detention for a class of criminal noncitizens who have already received significant process through the criminal justice system and for whom the risks caused by their release were already the subject of congressional findings. The rationale underlying the conclusions in those cases that the Due Process Clause requires no individualized determination for such detainees does not map onto the entire class of noncriminal applicants for admission who are now subject to mandatory detention under § 1225(b)(2) in the Eighth Circuit.

8

*Demore* and *Banyee* do not control the due process claim at issue for a second reason as well. Both cases considered whether the due process clause placed a limit on how long a noncitizen could be detained pursuant to § 1226(c). The court in *Banyee* described the question before it as "whether the year-long detention violated [petitioner's] rights . . . ." 115 F.4th at 931. Emphasizing the necessarily finite nature of § 1226(c) detention pending removal proceedings, the court found that Banyee's prolonged detention did not do so. *Id.* at 931–33. The court expressly rejected a multi-factor test which had been applied by the district court to determine when detention had become unconstitutionally long. *Id.* at 933 (finding "no room for a multi-factor 'reasonableness' test").

The *Demore* Court was likewise tasked with assessment of whether detention pending removal of "criminal aliens" violated due process and specifically noted that the average length of such detention was 47 days.[6] 538 U.S. at 529. The Court noted that this was shorter than the length of time presumptively allowed to effectuate removal in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.* at 528–29. Perhaps because Congress had already balanced the risk of flight and community danger risks presented by the "criminal alien" habeas petitioners in *Banyee* and *Demore*, the question in those cases focused on whether detention during removal proceedings could violate due process because of its duration; in contrast to this case, the central question was not whether the detentions violated the due process clause at their inception.

---

[6] In its briefing to the Supreme Court in *Jennings v. Rodriguez*, 583 U.S. 281 (2019), the government later confirmed that "the statistics it gave to the Court in *Demore* were wrong," and "[d]etention normally lasts twice as long as the Government then said it did." *Id.* at 343 (Breyer, J., dissenting).

For these reasons, the Court concludes that Mr. D.'s due process claim is not precluded by *Banyee* or *Demore*.

### *Thuraissigiam*

Respondents also cite *Thuraissigiam* for the proposition that for those noncitizens "who have never 'been admitted to the country pursuant to law,'" the only process due is "whatever process is 'expressly conferred by Congress.'" (Dkt. 7 at 12 (quoting *Thuraissigiam*, 591 U.S. at 138)). The Court disagrees. *Thuraissigiam* does not undermine Mr. D.'s due process claim because: (1) the petitioner there did not challenge the legality of his detention, but instead sought judicial review of the government's determination that he was ineligible for asylum; and (2) "*Thuraissigiam*'s holding, by its own language, is limited to noncitizens at the border—that is, those who are 'seeking initial entry.'" *Anthony Javier R.M.*, 2026 WL 1506306, at *6 (quoting *Thuraissigiam*, 591 U.S. at 139–40). By contrast, Mr. D. is not challenging his removability but instead raises a core habeas challenge, arguing only that his current detention is unlawful because he has not been given due process protection related to that detention. *Id.* (explaining that the petitioner "directly challenge[d] the lawfulness of his detention without a bond hearing"). In addition, Mr. D. has been in the United States for approximately ten years, during which he has undoubtedly developed ties to the community. *Id.* (observing that the "circumstances of Anthony Javier R.M.'s presence in the United States" entitled him to greater protections than one who has never established connections with this country and that "*Thuraissigiam* itself suggests that this distinction is material"). For these reasons, *Thuraissigiam* does not foreclose Petitioner's due process claim.

Ultimately, the Court concludes that none of the cases on which Respondents rely preclude Mr. D.'s claim that he is due greater process than he has received before he can continue to be detained.

### B. The *Mathews* Balancing Test

To resolve Mr. D.'s due process claim, the Court applies the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Anthony Javier R.M.*, 2026 WL 1506306, at *8–10 (applying *Mathews* to a similar claim); *Felipe S.P.*, 2026 WL 1911656, at *7–10 (same). Before doing so, however, the Court will address Respondent's threshold contentions that the *Mathews* framework is inapplicable in this context.

First, Respondents suggest that finding a right to liberty for undocumented aliens is at bottom an invocation of the doctrine of *substantive*, rather than *procedural*, due process, and must therefore satisfy the high bar set forth in *Washington v. Glucksberg*, 521 U.S. 702 (1997). Although *Glucksberg*'s requirements indeed establish a formidable threshold,[7] they do not apply here. As Judge Brasel explained in *Felipe S.P.*, "[b]ecause the fundamental interest at issue here—freedom from bodily restraint—is expressed in the Due Process Clause, government detention violates the Clause except 'in certain special and narrow nonpunitive circumstances." 2026 WL 1911656, at *2 (quoting *Zadvydas*, 533 U.S. at 690) (quotation marks and footnote omitted). Unlike the "*unstated*" rights for which the

---

[7] Under *Glucksberg*, substantive due process protects "fundamental rights and liberties which are . . . deeply rooted in this Nation's history and tradition, . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." 521 U.S. at 720–21. If the right asserted by a claimant is not a fundamental right or liberty interest, then the challenged government action or statute is permissible if it is "rationally related to legitimate government interests." *Id.* at 728.

11

*Glucksberg* test was developed, *id.* at *2 n.2, the right at stake here—liberty—is expressly enumerated in the Due Process Clause itself, *see, e.g.*, *Mirabelli v. Bonta*, 607 U.S. 492, 499 (2026) (Barrett, J., concurring) ("To mitigate [the risk of identifying unstated rights], the Court has crafted a demanding test for recognizing unexpressed rights: They must be 'deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty.'") (quoting *Glucksberg*, 521 U.S. at 721); *see also Felipe S.P.*, 2026 WL 1911656, at *2 n.2. The Court is not identifying an unenumerated right, but considering one stated in the Due Process Clause itself.

For essentially the same reason, the Court disagrees that the *Mathews* test is only applicable to assess whether the procedural process provided by the government is adequate to protect rights or interests awarded by statute. (Dkt. 7 at 10–12 (arguing that a procedural due process analysis cannot address any factor that is irrelevant to the statutory scheme).) Though the *Mathews* test was created in a case assessing deprivation of a statutorily created right, it cannot be that rights created by statute are granted procedural protections when a right expressly enumerated in the Constitution is not. And the Supreme Court has repeatedly made clear that the protections of the Due Process Clause apply to persons here illegally: "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001) (collecting cases). Respondents' position that aliens without permission to be here do not have any liberty interest beyond that afforded to them by statute runs afoul of this jurisprudence. So, the undersigned joins the "federal courts

12

around the country apply[ing *Mathews*] when analyzing what process the government owes noncitizens detained during removal proceedings, including those detained under Section 1225(b)(2)." *Felipe S.P.*, 2026 WL 1911656, at *7; *see also id.* at *7 n.4 (collecting cases).

Turning to application of *Mathews* itself, the test requires balancing three considerations: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335.

First, as already explored above, the Court finds that continued detention of Petitioner implicates a serious liberty interest. *Anthony Javier R.M.*, 2026 WL 1506306, at *8 (explaining that the petitioner's "'interest in being free from physical detention' by the Government 'is the most elemental of liberty interest'") (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). In light of Petitioner's continued detention in the Freeborn Adult Detention Center, the Court finds that the first factor weighs in Mr. D.'s favor. *Anthony Javier R.M.*, 2026 WL 1506306, at *8 (finding the first *Mathews* factor weighed in the petitioner's favor).

Next is the risk of erroneous deprivation of this liberty interest. In the detention context, "due process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001). The Supreme Court in *Jennings v. Rodriguez* identified two

purposes for all detention of noncitizens during immigration proceedings: ensuring that the noncitizen will appear for immigration proceedings and preventing danger to the community. 583 U.S. 281, 286 (2018) ("Detention during [immigration] proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."). Here, it is evident that there is no way of determining whether either of these two goals are advanced by Mr. D.'s detention without an individualized assessment of his case.

Relying on *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), Respondents argue that the only relevant consideration for purposes of due process is whether there is a risk that Petitioner would be erroneously classified as an "applicant for admission" who had not been admitted or paroled, so an evaluation of dangerousness and risk of flight is irrelevant. (Dkt. 7 at 11–12.) This argument is unavailing for at least two reasons. First, *Doe* involves an altogether different context. The plaintiff in *Doe* challenged the constitutionality of a state law requiring him to register as a sex offender based upon a prior conviction. 538 U.S. at 4. Doe claimed only that requiring him to register in this way resulted in reputational harm, not that it implicated his interest in freedom from confinement. *Id.* at 6–7 (noting that Supreme Court precedent had not recognized a liberty interest in reputational harm so the entitlement at issue was that afforded by statute, and the due process must only "protect" that). By contrast, Mr. D.'s claim in this case directly implicates his fundamental interest in physical liberty. *See Manuel G.*, 2026 WL 1256358, at \*4 (rejecting an identical argument based on *Doe*); *see also Noguez Estrada v. Warden*, No. 5:26-CV-00359, 2026 WL 1270556, at \*2 (S.D. Tex. Apr. 2, 2026) (explaining that

14

*Doe* (and other cases) did "not consider the right to liberty and the freedom from imprisonment guaranteed by the Fifth Amendment of the Constitution"). Second, as explored above, the Court disagrees that the INA alone sets the floor for the due process that is required; the Constitution can, and does, require more. *See, e.g.*, *Zadvydas*, 533 U.S. at 690; *Felipe S.P.*, 2026 WL 1911656, at *2.

Ultimately, this Court agrees with others that have found there is a high risk of erroneous deprivation of liberty in this context without an individualized bond hearing to assess whether Mr. D.'s detention is necessary to ensure his appearance for immigration proceedings and prevent danger to the community. *Anthony Javier R.M.*, 2026 WL 1506306, at *9; *Felipe S.P.*, 2026 WL 1911656, at *8–9; *David J.C.P. v. Blanche*, No. 26-cv-2181 (DWF/ECW), 2026 WL 1102725, at *3 (D. Minn. Apr. 23, 2026); *Manuel G.*, 2026 WL 1256358, at *4–5; *Mejia-Briones v. Warden*, No. 1:26-CV-1109-RP, 2026 WL 1245750, at *3 (W.D. Tex. May 5, 2026) ("The second factor—the risk of erroneous deprivation—also weighs strongly in favor of Petitioner. Petitioner lacks any opportunity to contest the reasonableness of his detention, meaning the risk of erroneous deprivation lies in this 'automatic continued deprivation of liberty for a noncitizen.'").

Finally, the third *Mathews* factor concerns the government's interest, including the administrative burdens that additional procedures would impose. While Respondents do not explicitly address this factor, it is evident that the government has an interest in uniformly administering the nation's immigration laws and preserving the detention framework that Congress established under § 1225(b)(2), and doing so efficiently.

15

The Court acknowledges that these are important government interests and that holding that a bond hearing is required by due process in this context could increase the government's burden. But until the Eighth Circuit's recent decision in *Avila*, the government routinely provided such bond hearings for detainees like Mr. D. and had done so for decades. And in the Circuits which have reached the opposite decision, they continue to do so. *See, e.g.*, *Barbosa da Cunha v. Freden*, 175 F.4th 61, 72–73 (2d Cir. 2026) (finding that 8 U.S.C. § 1226(a), which includes a provision authorizing release on bond, applied to noncitizens who are present in the U.S., but charged as inadmissible for entering without inspection and admission). There is no suggestion that the burden is unmanageable.

The government's interest in uniformly applying the law is also a valid concern. But again, other Courts of Appeals have reached the opposite conclusion from the Eighth Circuit in *Avila*. *See Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *9 (9th Cir. July 30, 2026) (collecting circuit court decisions that have concluded that § 1225(b)(2)(A) does not apply to unadmitted noncitizens apprehended inside the United States); *Cirrus Rojas v. Olson*, No. 25-3127, 2026 WL 2198315, at *1 n.1 (7th Cir. July 30, 2026) (same). Respondents are, therefore, required to routinely offer bond hearings to people in identical circumstances to Mr. D. in other districts, and requiring them to do so for him will not significantly change that landscape. Ultimately, the Court is not persuaded that these considerations outweigh Petitioner's substantial liberty interest.

For these reasons, the Court finds that Petitioner has shown his due process rights are violated by his continued detention without additional procedural protections and grants his Petition insofar as it seeks an individualized bond hearing. If Respondents fail to

16

provide Mr. D. with a bond hearing within fourteen days, they must release him from detention.

## ORDER

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. The Petition (Dkt. 1) is **GRANTED IN PART** and **DENIED IN PART**. It is granted as follows:

   a. Petitioner's detention under § 1225(b)(2) without an individualized bond hearing violates his due process rights.

   b. Respondents shall provide Petitioner with a bond hearing **within two weeks from the date of this Order**, and shall provide him and his counsel with notice of the hearing promptly after it is scheduled.

   c. If a bond hearing does not take place within two weeks, the Respondents shall immediately release Petitioner from custody into Minnesota on the previously imposed conditions, and with his personal effects.

2. Respondents shall file a status report with the Court within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody detailing the results of the bond hearing or its actions related to release.

**Let Judgment be entered accordingly.**


Date: August 12, 2026                    *s/Katherine M. Menendez*
                                         Katherine M. Menendez
                                         United States District Judge

17